### Margaret E. Slosson, Appellant, v. Martin H. Slosson, Appellee.

### Gen. No. 20,523.   (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. JOHN M. O'CONNOR, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed April 13, 1915.

### Statement of the Case.

Bill in the nature of a bill of review by Margaret E. Slosson against Martin H. Slosson to set aside a decree of divorce entered in her favor April 30, 1912. The original bill was filed March 19, 1913, to which defendant demurred and the demurrer was sustained. The amended bill was filed December 23, 1913, and from the decree of the Superior Court of Cook county dismissing the same for want of equity, complainant appeals.

The amended bill alleged, in substance, that on August 11, 1909, complainant was lawfully married to the defendant at Kenosha, Wisconsin; that on March 14, 1912, defendant, by his cruel treatment hereinafter mentioned, and by the "threats and coercion" of his agents, "caused your oratrix to file" in the Superior

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Court of Cook county a bill for divorce against defendant on the ground of extreme and repeated cruelty; that on April 24, 1912, said cause was called for trial, at which time both parties were present by their solicitors and complainant testified in open court to the acts of cruelty as set forth in said bill; that the trial resulted in a decree, "procured at the instance of the defendant" on April 30, 1912, which purported to dissolve the said marriage; that complainant begs leave to refer to said pretended decree, etc., and "to make said decree and all of the proceedings a part hereof, as though set forth herein at length;" that said pretended decree ordered that complainant should receive $1,800 in full of all alimony, $250 for solicitor's fees and $150 for certain incidental expenses, which amounts "were paid and the records were satisfied in open court;" that out of the amount received by complainant she was compelled to pay debts to the amount of $500 incurred prior to the entry of the decree, and that a portion of the remainder has been spent in paying doctor's bills and defraying necessary living expenses.

In the fourth paragraph of the bill complainant alleged that the filing of said bill for divorce, and the proceedings had thereafter culminating in said purported decree, "was not her free and voluntary act and deed, but was done at the instance and was brought about by the fraud, coercion, duress and undue influence of the defendant"; that complainant filed said bill for divorce at a time when she "was ill, unable to work for a livelihood, was without means or friends to support her, and was actually in need of the necessaries of life, and was actually starving, and had but meagre food for several weeks prior to the hearing." She further alleged, in substance, that defendant had treated her in a cruel manner, and in February, 1911, refused to live with her; that she took a position as

cashier in a barber shop in Chicago; that shortly thereafter an attorney employed by defendant informed her that a divorce from defendant was the only settlement of her domestic troubles that could be made; that subsequently she employed a Chicago attorney and requested him to see defendant and effect a reconciliation, if possible, and if not to procure separate maintenance for her; that said attorney did not start any litigation but succeeded in obtaining from defendant $75 per month for two or three months; that in July, 1911, defendant stated to complainant over the telephone that he would send her $65 per month for one year and that she would have to be content with that or get nothing; that in September, 1911, she went to Seneca Falls, N. Y., for her health, and while there received $65 from defendant for the October allowance; that in November, 1911, she was notified by her said Chicago attorney that no more money would be sent to her until she applied for and obtained a divorce; that she telegraphed and wrote defendant requesting her November allowance but received no reply from him; that she pawned her diamond ring to get sufficient funds to return to Chicago, and upon arriving in Chicago employed another attorney who filed a bill for separate maintenance in her behalf against defendant; that no service of process in said suit could ever be made on defendant; that during the winter of 1911 and 1912 she only received the sum of $65 from defendant, designated as her November, 1911, allowance; that in order to live she was compelled to pawn her watch and other personal articles and borrow money from friends, and existed in consequence under the most miserable circumstances; that by reason of the long-continued inhuman treatment by defendant, and the physical illness and mental anguish she suffered by reason thereof, she was ''mentally incompetent to transact

business or consent to file a bill for divorce";
that defendant, knowing the mental condition of com-
plainant, "conspired with his attorney and one Will-
iam Schroeder" of Kenosha, Wisconsin (who was
employed by the same firm that employed defendant),
to cause complainant to file a bill for divorce, and
they induced complainant to file such a bill, under an
arrangement whereby defendant was to pay complain-
ant $1,500 and make complainant the beneficiary
in a life insurance policy on the life of de-
fendant for $12,000; that defendant did not have
his life insured for $12,000, or in any amount, in
favor of complainant; that said Schroeder telephoned
complainant and stated that he would see that his em-
ployer kept the defendant out of the jurisdiction of the
court indefinitely unless complainant would continue
with the divorce proceedings, and that complainant
would never get a cent of money from defendant; that
as soon as the bill for divorce was filed, the defendant
entered his appearance in said suit by his attorney;
that said bill for divorce was filed, and said pretended
decree of divorce was procured, pursuant to said con-
spiracy to accomplish such end and purpose, which con-
spiracy was entered into between defendant, his said
attorney and said Schroeder, and "to which your ora-
trix was not a voluntary party, but because of the
paralysis of her will and the mental incompetency un-
der which she was suffering she was unable longer to
resist the attacks of her husband, and permitted de-
fendant to carry out his designs; and that said pre-
tended decree of divorce was procured from said court
at the special instance and through the instrumentality
of the defendant."

Complainant further alleged that the acts of cruelty
testified to by her at said divorce trial "were true,"
and that said acts were only a small part of the physi-
cal torture which defendant inflicted upon her in order

that he might force her to secure a decree of divorce; that "owing to her mental condition and paralysis of the will she did not testify fully as to all the facts"; that if at the time of the trial she had had control of her will power, and had been in proper mental condition she would have disclosed said conspiracy; and that "in her mental condition she was afraid that she would remain in actual need of the necessities of life unless a decree for divorce was obtained."

Complainant further alleged that she did not file a motion to open said decree or prosecute an appeal "because she was compelled to devote her time to regain her mental and physical health," and that "after she had sufficiently gained her mental poise to fully comprehend the situation into which she had been thrust, she consulted a lawyer and was informed as to her rights in the matter and brought this her suit to annul said decree."

GEORGE C. GUTHRIE and GEORGE W. PENNINGTON, for appellant.

MILLER, STARR, PACKARD & PECKHAM and HENRY J. TONER, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

## Abstract of the Decision.

1. EQUITY, § 574*—*when bill of review insufficient.* Bill in the nature of a bill of review to set aside the decree of divorce rendered in favor of complainant on the ground that such decree was procured through the fraud, coercion, duress and undue influence of the defendant and as the result of the mental incapacity of the complainant, *held* insufficient on the ground that allegations setting forth the grounds for the bill were mere conclusions.

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

Slosson v. Slosson, 192 Ill. App. 259.

2. JUDGMENT, § 343*—*what are requisites of bill to impeach judgment.* A bill to impeach a judgment or decree for fraud must substantially state the facts relied on as constituting the fraud.

3. FRAUD, § 72*—*what are requisites of allegations setting up.* The party alleging fraud must set forth in his pleadings the facts relied upon to show same, and mere conclusions of the pleader without averments of the facts will not support an allegation of fraud.

4. JUDGMENT, § 321*—*when may be annulled for fraud.* While a court of equity may annul a judgment or decree obtained by fraud, to justify the exercise of the power it must be made clearly to appear that the judgment or decree has no other foundation than fraud.

5. DIVORCE, § 61*—*when decree not set aside at the instance of successful party.* A decree of divorce rendered in favor of the complainant upon her allegations and proof of extreme and repeated cruelty will not be set aside on a bill in the nature of a bill of review by such complainant setting forth that the grounds upon which said decree of divorce was based, and her testimony in support thereof were in fact true, but that she was induced to institute such proceeding through the fraud of the defendant.

6. DIVORCE, § 59a*—*when allegations of bill of review insufficient.* Allegations in a bill in the nature of a bill of review to set aside a decree of divorce rendered in favor of the complainant in a suit instituted by her to the effect that at the time of the institution of such proceedings she was in pecuniary distress and suffered vexation and annoyance by the acts of defendant, *held* insufficient to show such coercion, duress and undue influence on the part of the defendant as to justify the relief sought.

7. EQUITY, § 560*—*when bill to set aside decree fails to explain laches.* A bill to impeach a decree of divorce entered in favor of the complainant in a suit instituted by her, on the ground that such proceeding was instituted through the fraud, coercion and undue influence of the defendant, *held* insufficient to explain a delay of nearly a year in filing a bill to impeach said decree.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.